**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RIVERSIDE APARTMENTS LIMITED, | Civil Action No. 16-cv-6875-RJS |
| Plaintiff, | |
| v. | **PLAINTIFF'S FIRST AMENDED** |
| HUNT COMPANIES, INC., HUNT MORTGAGE GROUP, LLC fka Centerline Capital Group, and OWEN BREHENY, | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

**NATURE OF THE ACTION**

1. This action arises under the Equal Credit Opportunity Act, 15 USCA 1691, et seq. and Regulation B, Title 12 Code of Federal Regulations, Part 202 (the "ECOA"). Plaintiff also alleges certain supplemental state law claims.

2. Defendants violated the ECOA by, among other things, and without limitation:

   a. Refusing to grant credit substantially in the amount or on substantially the terms outlined in the application for credit;

   b. Failing to notify Plaintiff, either orally or in writing, of an adverse action on its application for credit, with the reason(s) for the adverse action, within thirty (30) days of obtaining all the information that Defendants required and regularly obtained and considered in evaluating credit applications in the amount and type of credit requested by Plaintiff;

   c. Failing to notify Plaintiff, either orally or in writing, that its application for credit, i.e. loan, was incomplete within 30 days, in the event Defendants allege that the application was incomplete (which it was not);

1

d. Failing to use reasonable diligence in obtaining information as is required to process an application for credit;

e. Failing to provide copies of appraisals, engineering reports, and/or valuations developed in connection with Plaintiff's application for a loan, and requiring payment in exchange for same;

f. Unlawfully requesting inappropriate information about a current or former spouse, unrelated to the business loan requested;

g. Discriminating against Richard Reinberg, who was 82 years old at the time of the application, based on his age;

h. Failing to provide the required notice, either orally or in writing, of incompleteness of credit application;

i. Failing to provide any specific statement indicating the principal reasons for taking adverse action against Plaintiff, either orally or in writing; and

j. Refusing and/or failing to extend the requested credit even though the financing on the subject property was a non-recourse loan subject to Fannie Mae Multi-Family Small Loan Program Guidelines ("Fannie Mae Loan Program"), which Plaintiff either met or exceeded.

3. Defendants are also liable for conversion, fraud/misrepresentation and breach of contract under New York State law.

4. Plaintiff has sustained damages in excess of $75,000.

## PARTIES AND ASSOCIATIONS

5. Plaintiff, Riverside Apartments Limited ("Riverside"), is a limited liability company organized and operating under the laws of the State of Ohio, with its principal place of

business located at 3355 Richmond Road, Suite 231-A, Beachwood, Ohio 44122. Riverside owns the Riverside Village Apartments, located at 650 Dixon Boulevard, Cocoa, Florida 32922 ("Riverside Village" or the "Property"), which serves as the subject matter related to Plaintiff's application for credit, i.e. loan.

6.  Non-party Richard Reinberg is an individual and principal, i.e. Member, of Riverside. He is a senior citizen, as he is 82 years old, and entitled to the protections against discrimination because his age as provided in in the ECOA. Riverside also, as an entity, is protected from said discrimination. Mr. Reinberg served as the Sponsor required to secure the credit applied for under the Fannie Mae Loan Program.

7.  Non-party DevCorp of America, Inc. is a Florida corporation and Managing Member of Riverside.

8.  Defendant Hunt Companies, Inc. ("Hunt") is, on information and belief, a Delaware corporation headquartered and with a principal place of business located at 4401 North Mesa Street, El Paso, Texas 79902. Among other things, Hunt is an investor and real estate developer in real estate assets, and provides financing and capital to real estate investors. Defendant Hunt Companies, Inc. is the parent company of Defendant Hunt Mortgage Group, LLC fka Centerline Capital Group.

9.  Defendant Hunt Mortgage Group, LLC ("Hunt Mortgage), formerly known as Centerline Capital Group, is, on information and belief, a company formed under the laws of the state of Delaware and doing business in New York, Florida, Ohio, and various other states.  Hunt Mortgage maintains its principal place of business at 230 Park Avenue, 19th Floor, New York, New York 10169, and is a wholly owned subsidiary of Defendant Hunt Companies, Inc. Hunt Mortgage focuses on financing commercial real estate, and

provides non-recourse direct lending and arranges financing for commercial properties nationwide.

10. Defendant Owen Breheny is an individual with a principal place of residence, upon information and belief, in New York.  At all times herein mentioned, Breheny was a Senior Vice President and Regional Director of Hunt Mortgage and personally participated in the actions violating Plaintiff's rights, while acting within the course and scope of said agency and/or employment with Hunt Mortgage, and with the full power and authority to act on behalf of and to legally bind Defendants Hunt and Hunt Mortgage.

**JURISDICTION**

11. This Court has subject matter jurisdiction pursuant to 28 USC 1331 because the action involves a federal question/statute.  The Court has supplemental jurisdiction over the state law claims pursuant to 28 USC 1367(a)

12. The Southern District of New York is the proper venue for this action pursuant to 28 USCA 1391(b) in that one or more defendants have a principal place of business and/or reside in this judicial district, and a substantial part of the events and decision-making giving rise to Plaintiff's claims occurred in this district.

**STATEMENT OF FACTS**

13. The property at issue is Riverside Apartments, located at 650 Dixon Boulevard, Cocoa, Florida 32922, a complex of fifty-two rental dwellings, a small multi-family project ("Riverside Village" or the "Property").

4

14. Riverside Village is owned by Plaintiff Riverside Apartments Limited ("Riverside"). Riverside, at all times relevant herein, is a business that had less than $1,000,000.00 in gross revenues.

15. The ECOA, and all its protections, applies to commercial property loans, and specifically loans sought under the Fannie Mae Loan Program.

16. On September 8, 2014 Defendants provided Plaintiff with the summary terms for the requested loan under the Fannie Mae Loan Program. Significantly, the loan being offered was a non-recourse loan. A non-recourse loan is a type of loan that is secured only by collateral, i.e. in this case the property. It does not require any type of personal guarantee, because if default of the loan occurs the issuer of the loan seizes the property and cannot seek out the borrower for liability.

17. Plaintiff, Plaintiff's Sponsor (Reinberg) and Plaintiff's property qualified for the requested credit under both Defendants' and the Fannie Mae guidelines.

18. Plaintiff agreed to Defendants' September 8, 2014 Summary of Terms on September 18, 2014.

19. Plaintiff paid the application fee of $8,500.00 on September 22, 2014.

20. On September 26, 2014 Plaintiff provided Defendants with its completed Application Questionnaire, which was filled out and signed by Plaintiff's principal and Sponsor, Richard Reinberg.

21. On or about September 29, 2014, Plaintiff submitted to Defendants all documents required under Defendants' "Small Loans Application Checklist."

22. Defendants provided Plaintiff with Defendants' Due Diligence Requirements for the loan, which were effective as of October 21, 2014. These requirements included, in part,

the resume and underwriting certificate for Richard Reinberg's wife, Ruth Reinberg, as well as a contingent liabilities form for Ruth Reinberg. These documents also included substantial and required financial information on Richard Reinberg. Defendants requested the financial information on both Richard and Ruth Reinberg, even though the loan Defendants offered, and Plaintiff accepted, was a non-recourse loan, qualified under the Fannie Mae (and Defendants') guidelines, and even though Ruth Reinberg had absolutely no relationship to Plaintiff or to Plaintiff's property.

23. As of October 3, 2014, Defendants had all the documents they requested, necessary to evaluate Plaintiff's requested loan, including documents specifically and improperly requested by Defendants regarding Ruth Reinberg. As of this date, Plaintiff's loan application was complete and in Defendants' possession.

24. On or about October 27, 2014 Plaintiff's agent, Bonnie Reinberg, explicitly informed Defendants that Ruth Reinberg was not a Member of Riverside, and requested an explanation as to why Ruth Reinberg was listed as a guarantor of what was supposed to be a non-recourse loan.

25. Information requested regarding Mr. Reinberg's spouse, Ruth Reinberg, does not fall under any of the exclusions set forth in 12 CFR § 1002.5(c).

26. As of no later than October 3, 2014, the subject property self-qualified for the requested loan under the Fannie Mae and HMS requirements and guidelines.

27. Despite refusing to offer Plaintiff the credit requested based upon the agreed-upon loan application, at no time during this process did Defendants issue any document(s) or oral explanations explaining the reasons, specific or otherwise, for their refusal to extend the requested loan and provide Plaintiff with the statutorily required explanation, reasons,

etc. for denying and/or refusing to extend said loan. Moreover, at no time did Defendants advise Plaintiff, either in writing or orally, that Plaintiff's loan application was in any way incomplete.

28. Instead, Defendants merely refused to extend the loan, i.e. refused to grant the credit in substantially the amount and under the terms requested and agreed upon in the application. Instead, Defendants refused to extend credit to Plaintiff because, among other things, and upon information and belief, Defendants were under the opinion and belief that Richard Reinberg, Plaintiff's Principal and proposed Sponsor, by Defendant, was too advanced in his age, and, therefore, was not a good candidate to sponsor the loan that was non-recourse and did not require a guarantor. Further, Defendants' consideration of Mr. Reinberg's age, to the extent it was relevant at all to a non-recourse loan, was not based upon an "empirically derived, demonstrably and statistically sound, credit system" as required under 12 CFR § 1002.2(p) of Regulation B. And, any "judgmental" evaluation of Mr. Reinberg's credit served no purpose of evaluating other applicant information that has or had a demonstrable relationship to creditworthiness. According to Defendants, but for Mr. Reinberg's age, they would have extended the requested credit to Plaintiff.

29. Part of the $8,500.00 application fee was earmarked and used by Defendants to obtain an appraisal, environmental report and engineering report on the property. At the time Defendants requested its application fee, or shortly thereafter, but before ordering the third-party vendor reports, Defendants knew and were well-aware of Mr. Reinberg's age and credit rating information, because Defendants requested and obtained Mr. Reinberg's credit information related to Mr. Reinberg's requirement to serve as Sponsor for the loan,

as part of the completed loan application. Nonetheless, Defendants ordered these documents and, upon information and belief, qualified the property under its non-recourse loan offer based upon these positive reports.

30. On November 4, 2014 Defendants advised Plaintiff that Defendant was declining to proceed with the loan processing because of Mr. Reinberg's alleged lack of liquidity, distressed credit scenario and age, i.e. Mr. Reinberg risked not paying back his credit debt because he was 82 years old.

31. However, Defendants were well-aware of Mr. Reinberg's age and financial situation when they offered the non-recourse loan to Plaintiff, and which was later accepted by Plaintiff, without a counter-offer.

32. By reneging on the loan application process, i.e. not processing the loan – even though Defendants were not formerly declining the loan – Defendants placed Plaintiff in the precarious financial position of having to get refinanced under duress which, among other things, caused Plaintiff to incur substantial additional financial fees, costs, interest and legal costs, as well as lost business opportunity related to the subject property,

33. To compound matters, to get financed with another lender, Plaintiff needed to provide the new lender with the appraisal, environmental and engineering reports that had already been prepared on the property by Defendants and paid for by Plaintiff. Plaintiff requested Defendant to turn over those documents to provide to the new lender. Defendants refused.

34. On November 5, 2014, counsel for Plaintiff advised Defendant Breheny that it was imperative that Defendants provide to Plaintiff the appraisal, environmental and

engineering reports for the property to provide to the new lender, to secure the necessary financing on the property.

35. Defendant Breheny responded that same day that it was Defendants' policy not to provide to customers, such as Plaintiff, the appraisal, environmental and engineering reports performed on the property, unless customers, such as Plaintiff, signed a release, i.e. declination letter in favor of Defendants that purported to release any and all claims against Defendants.

36. On November 25, 2015, Defendant Breheny corresponded with counsel for Plaintiff and again advised that Defendants would not provide Plaintiff with the appraisal, environmental and engineering reports prepared for the property, unless Plaintiff agreed to release Defendant by way of signing Defendants' proposed declination letter.

37. Defendants represented to Plaintiff that it was Defendants' policy not release reports used on loan applications for property analysis, unless the person seeking credit, i.e. loan, first signed a release in favor of Defendants, i.e. signing the declination letter.

38. Defendants did not furnish Plaintiff with any documents relating to "Fannie Mae and Hunt Mortgage Group requirements."

39. Defendants unnecessarily delayed the processing of the application, requesting additional documents that were not regularly required to be obtained and considered in the evaluation of credit applications in the amount and type of credit requested by Plaintiff.

40. Even though more than one year has elapsed since the completion of Plaintiff's application for credit, Defendants still have not processed the application nor have they made Plaintiffs aware, either orally or in writing, of any missing information that Defendants may have required to complete the loan process.

9

41. Defendants, by and through Owen Breheny, specifically advised counsel for Plaintiff that they were declining to process the loan, but failed to give any reasons why the adverse action was taken, per the ECOA requirements.

42. Plaintiff was forced to acquire a new environmental report, engineering report and have the original appraisal re-addressed to a new lender at their own expense to close its loan with a different lender.

**FIRST CLAIM FOR RELIEF**
*Failure to Notify of Adverse Credit Decision in Violation of the ECOA, 15 USC 1691(d)(1) and 12 CFR 202.9(a)(i), (ii), (c) and (f)*

43. Plaintiff refers to and incorporates herein all the foregoing allegations.

44. Defendants failed and continue to fail to provide a statement of specific reasons in writing advising why they took an adverse action.

45. Defendants violated the ECOA, 15 USC 1691(d)(1) and 12 CFR 202.9(a)(i) by failing to notify Plaintiff, either orally or in writing, of the adverse action within the 30 days of Defendants' receipt of the completed loan application. Plaintiff is informed and believes that its application was completed no later than October 3, 2014. By that time, Plaintiff was informed and believed that Defendants had in their possession all information that Defendants regularly obtain and consider in evaluating applications for the amount and type of credit requested. Since the application was completed and in Defendants' possession as of October 3, 2014, Defendants were required to notify Plaintiff of any adverse decision no later than November 2, 2014 – but Defendants failed to do so.

46. Alternatively, to the extent that Defendants contend that the loan application was incomplete as defined by 12 CFR 202.2(f), Defendants violated the ECOA, 15 USC 1691(d)(2) and 12 CFR 202.9(a)(ii) and (c)(1) by failing to notify Plaintiff, either orally

or in writing, of any adverse action regarding the loan application within 30 days after taking that action an incomplete application, and by failing to provide a statement of reasons.  Plaintiff is informed and believes that prior to November 4, 2014, Defendants had already determined to deny the application.  Plaintiff is informed and believes that Defendants intentionally concealed this adverse action through the repeated requests for additional information to cause Plaintiff to abandon the application.

47. As a direct, legal, and proximate result of the failure to provide notice, either orally or in writing, of the adverse decision, Plaintiff suffered damages in that, among other things, it was required to seek and obtain financing from a different lender at increased financing cost, a shorter loan term, late fees, the loss of their deposit, and the incurring of additional expenses for an appraisal, an environmental report, and an engineering report, and additional legal fees, insurance costs, and expenses.

48. Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, insurance, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses.  Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

49. Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional

misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

## SECOND CLAIM FOR RELIEF
### *Failure to Notify of Incomplete Application in Violation of the ECOA, 12 CFR 202.9(c)(1)(ii), (c)(2)*

50. Plaintiff refers to and incorporates herein all the foregoing allegations.

51. To the extent that Defendants contend that Plaintiff's application was incomplete as of 30 days after the date of Defendants' receipt of Plaintiff's completed loan application on or before October 3, 2014, and no adverse action had yet been taken, Defendants violated the ECOA, 12 CFR 202.9(c)(1)(ii) and (c)(2) by failing to notify Plaintiffs, either orally or in writing, of the incompleteness of their application.  Instead, Defendants created difficulties and made inappropriate and unlawful document requests to encourage Plaintiffs to abandon the application.  Under 12 CFR 202.9(c)(2), Defendants were obligated to provide written or oral notice to Plaintiff specifying the information needed, designating a reasonable period of time for Plaintiff to provide the information requested, and informing Plaintiff that the failure to provide the information requested will result in no further consideration being given to the application. Defendants failed to do this.

52. As a direct, legal, and proximate result of the failure to provide notice of incompleteness, Plaintiff suffered damages in that, among other things, it was required to seek and obtain financing from a different lender at increased financing cost, late fees, increased insurance costs, the loss of their deposit, inability to place additional financing on the property( as per the Fannie Mae small loan program) and the incurring of additional expenses for an appraisal, an environmental report, and an engineering report, and legal fees and expenses.

53. Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, additional insurance costs, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses.  Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

54. Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

### THIRD CLAIM FOR RELIEF
*Failure to Use Reasonable Diligence in Obtaining Information in Violation of the ECOA, 12 CFR 202.2(f)*

55. Plaintiff refers to and incorporates herein all the foregoing allegations.

56. Defendants' failures to use reasonable diligence in violation of 12 CFR 202.2(f) include, but are not limited to:

    a. Failing to inform Plaintiff of an adverse action on its application, either orally or in writing;

    b. Failing to inform Plaintiff of an incomplete action, either orally or in writing;

    c. Requiring Richard Reinberg as a sponsor/guarantor on a non-recourse loan;

d. Failing to truthfully inform Plaintiff as to its property meeting the Fannie Mae "requirements" without providing Plaintiff sufficient information to determine the truth or falsity of Defendants' statements;

e. Failing to furnish Plaintiff with information regarding the Fannie Mae "requirements;"

f. Failing to truthfully inform Plaintiff as to that its property meeting the "Hunt Mortgage Group requirements" without providing Plaintiff sufficient information to determine the truth or falsity of Defendants' statements

g. Failing to furnish Plaintiff with information regarding the "Hunt Mortgage Group requirements" as mentioned on the September 8, 2014 term sheet;

h. Preventing Plaintiff's compliance with requirements by failing to disclose them;

i. Preventing Plaintiff's compliance with requirements by changing them;

57. The failure to inform Plaintiff led to a delay until Defendants indicated to Plaintiff that Defendants were unwilling to process the application any further.  Defendants then attempted to extract a release from Plaintiff in an effort to minimize or mitigate their liability.

58. Defendants' actions forced Plaintiff to expend additional funds to obtain an appraisal, environmental report, engineering report, and other products and services necessary to obtain new financing.

59. As a direct, legal, and proximate result of Defendants' failure to use reasonable diligence, Plaintiff was damaged by an unreasonable delayed in obtaining financing necessary for the payment of the then-existing mortgage on the property.

60. Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, additional insurance costs, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses.  Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to be in excess of Seventy-Five Thousand Dollars ($75,000.00).

61. Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

## FOURTH CLAIM FOR RELIEF
### *Failure to Provide Copies of Documents in Violation of 15 USC 1691(e)*

62. Plaintiffs refer to and incorporate herein all the foregoing allegations.

63. In 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act") amended the ECOA provisions to provide guarantees that applicants receive important information about their value estimates. This rule, known as the ECOA Valuations Rule went into effect in January 18, 2014.

64. The ECOA Valuations Rule requires creditors to disclose to applicants that they have the right to receive copies of appraisals and written valuations. Defendants breached this requirement.

65. The ECOA Valuations Rule requires creditors to automatically send a free copy of appraisals and other written valuations promptly after they are completed, regardless of whether credit is extended, denied, incomplete, or withdrawn. Defendants breached this requirement.

66. The ECOA Valuations Rule applies to all written valuations – not just appraisals – developed in connection with an application for a covered transaction, such as the transaction outlined herein.

67. Under the ECOA Valuations Rule, a creditor is prohibited from conditioning the providing of copies to the applicant upon payment of a fee. A completed valuation must be promptly provided the applicant, whether or not the applicant pays for it. Defendants breached this requirement.

68. The ECOA Valuations Rule applies to the subject request for credit, i.e., a loan for business purposes such as investment property.

69. Plaintiff did not waive any requirements set forth in the ECOA Valuations Rule.

70. Defendants violated the ECOA by failing to provide Plaintiff with a copy of all documents described by that statute, including but not limited to appraisals, valuations, and all supporting documents thereof.

71. Defendants violated the ECOA by failing to inform Plaintiff of its right to obtain copies of all documents described by that statute.

72. In fact, Defendants unequivocally stated that the only way that Plaintiff would receive the documents is if Plaintiff would sign Defendants' release and pay for the documents.

73. As a direct, legal, and proximate result of Defendants' failure to provide copies of appraisals and valuations, Plaintiff suffered damages in that Plaintiff had to pay to obtain a new appraisal and other valuations.

74. Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses. Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

75. Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

**FIFTH CLAIM FOR RELIEF**
*Unlawful Requests for Information About Current Spouse in Violation of the ECOA, 12 CFR 202.5(c)*

76. Plaintiffs refer to and incorporate all the foregoing allegations.

77. The Fannie Mae Loan program that Defendants promised to extend credit to Plaintiff under required a Sponsor. As such, Defendant required Mr. Reinberg, as the Sponsor, to apply for credit with Defendants on behalf of the Plaintiff.

78. Ruth Reinberg, Richard Reinberg's wife, held no role with Plaintiff, or was affiliated with Plaintiff in any way.

79. Ruth Reinberg was not to be liable on the account.

80. In violation of 12 CFR 202.5(c), Defendants requested information on Ruth Reinberg, the spouse of Plaintiff's sponsor Richard Reinberg who Defendants required apply for credit in order to secure the subject loan.

81. As a direct, legal, and proximate result of Defendants' unlawful inquiries, Plaintiff suffered damages in their attempts to obtain credit were unnecessarily delayed.

82. Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses. Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

83. Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

### SIXTH CLAIM FOR RELIEF
*Age Discrimination in Violation of the ECOA, 15 USC 1691(a)(1)*

84. Plaintiff refers to and incorporates all the foregoing allegations.

85. Defendants offered Plaintiff a non-recourse loan.

86. Defendants then required Richard Reinberg to act as a Sponsor for that loan when through diligence they could have had an alternative sponsor based on the members of the LLC, ostensibly as a target for recourse in the event of a default on the loan.

18

87. Defendants provided no rationale for the necessity of a sponsor, nor their choice for said sponsor.

88. Defendants' failure to provide notice, unreasonable delays, failure to use reasonable diligence, requests of inappropriate information, and statements regarding Plaintiff's sponsor Richard Reinberg's age are forms of age discrimination in that they significantly reduce the opportunity for an elderly applicant to complete the loan application process and obtain loans.  By their very age, the elderly have a limited time to complete the process.  Delay inherently and irrevocably impacts the elderly disproportionately and in a discriminatory manner.

89. Because of Defendants' failure to provide notice, their failure to use reasonable diligence, the unreasonable delays, and the requests of information, Defendants violated 15 USC 1691(a)(1) in ways including but not limited to:

   a. Requiring Plaintiff to obtain Richard Reinberg as a sponsor on a non-recourse loan;

   b. Discriminating against Plaintiff based on its sponsor Richard Reinberg's age;

   c. Considering Plaintiff's sponsor's age in determining whether to process Plaintiff's application for credit.

90. These and other actions by Defendants demonstrate a discriminatory motive and animus, and are impermissible under the ECOA.  Moreover, Plaintiffs are informed and believe that Defendants would not have engaged in the same actions with a similarly situated individual younger than Richard Reinberg.  Indeed, Defendants confirmed that but for Mr. Reinberg's age, the requested credit would have been extended.

91. Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses. Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

92. Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

**SEVENTH CLAIM FOR RELIEF**
*Conversion under New York State law*

93. Plaintiff refers to and incorporates all the foregoing allegations.

94. At the initiation of the application process, Defendants charged Plaintiff an allegedly non-refundable fee of $8,500 (Eight Thousand Five Hundred Dollars), to be used specifically to secure professional reports to be used to secure the required loan.

95. Defendants took those funds from Plaintiff and converted them for their own use.  By doing so, Defendants intentionally and without authority, assumed and/or exercised control over Plaintiff's personal property, thus interfering with Plaintiff's right of possession.

96. Plaintiff had and continues to have a possessory right over the $8,500.00 taken from it by Defendants.

97. Defendants, without authority to do so, assumed the exercise over the right of ownership of the funds which, since the loan never closed, belonged to Plaintiff to the exclusion of Defendants' alleged ownership rights.

98. The $8,500.00 should have been placed into a separate account for use only in the event the requested credit was extended, and specifically to be earmarked for use to secure the necessary professional reports required to secure the requested loan.

99. Plaintiff has demanded the return of those funds, in whole or in part and with an accounting of the funds expended. But despite this request, Defendants maintain and have maintained dominion and control over the funds requested to be returned, in derogation of Plaintiff's rights.

100. Plaintiff is entitled to a return of those funds, and has demanded the same on multiple occasions.

101. Defendants have failed and refused to return any portion of the funds unless Plaintiff waives its rights to pursue any remedies.

102. Because of Defendants' conversion of the application fee, Plaintiff is entitled to actual compensatory damages in the amount of $8,500 (Eight Thousand Five Hundred Dollars).

103. Defendants' retention of the funds, when set against the background of their multiple violations of the ECOA, constitute "such gross, wanton, or willful fraud, dishonesty, or malicious wrongdoing as to involve a high degree of moral culpability, making it appropriate to deter the defendants from engaging in similar conduct in the future and to induce the victim to take action against the wrongdoer." Whitney v. Citibank, N.A., 782 F.2d 1106 (2nd Cir., 1986) citing Walker v. Sheldon, 10 N.Y.2d 401

(1961).  Plaintiff is entitled to an award of punitive damages up to the maximum prescribed under New York law.

## EIGHTH CLAIM FOR RELIEF
### *Fraud And Intentional Misrepresentation*

104.    Plaintiff refers to an incorporates all the foregoing allegations.

105.    Defendants made materially false and fraudulent representations to Plaintiff and Plaintiff's representatives, including, and specifically, without limitation,, that even though Plaintiff and Plaintiff's property qualified for credit and non-recourse lending under the Fannie Mae Loan Program, and Defendants specifically represented to Plaintiff that they were offering a non-recourse loan, Defendant continued to seek credit qualifying information from Plaintiff's Sponsor, Richard Reinberg, and his wife, Ruth Reinberg, and then, ultimately, refused to extend credit to Plaintiff based upon Mr. Reinberg's age, when that was entirely irrelevant to the financing requirements under the Fannie Mae (and Defendants') underwriting guidelines.

106.    Defendants made the specific false representation(s) that Defendant required a Sponsor under the Fannie Mae Loan Program, yet a Sponsor is not required for a non-recourse loan. Defendant then used this false representation to base its denial of a non-recourse loan on the age and creditworthiness of the Sponsor Reinberg.

107.    In making these materially false representations, and upon information and belief, Defendant intended to defraud Plaintiff by, among other things: charging Plaintiff fees and loan costs, while never intending to extend the requested and agreed upon credit, under the guidelines that Plaintiff, in fact, qualified under.

108.    Plaintiff and Plaintiff's representatives reasonably relied upon Defendants materially false representations.

109.     As a direct and proximate result of Defendant's intentionally and materially false representations, Plaintiff did incur damages in excess of $75,000.00.

110.     The elements of intentional misrepresentation and fraud under New York law are exactly the same. See *MBF Clearing Corporation v. Shine*, 212 AD2d 478, 479, 623 N.Y.S. 2d 204 [1st Dept 1995].

## NINTH CLAIM FOR RELIEF
### *Breach of Contract[1]*

111.     Plaintiff refers to and incorporates all the foregoing allegations.

112.     A contract existed between Defendants and Plaintiff to secure the credit, i.e. the loan for the subject property.

113.     Plaintiff performed all obligations required of it under the contract including, without limitation, providing all necessary and required documentation to Defendants establishing that it and the subject property qualified for the loan under both Defendants' and the Fannie Mae Loan Program requirements.

114.     Defendants failed and/or refused to extend the requested credit, i.e. loan, as promised, despite Plaintiff and the subject property qualifying for same.

115.     As a direct and proximate result of Defendants' breach of contract Plaintiff is entitled to actual compensatory and consequential damages, including and without limitation all costs incurred because of seeking and obtaining new financing, additional insurance costs, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses.  Plaintiff is entitled to compensatory damages in an amount

---

[1] This cause of Action is asserted against all Defendants, except Defendant Breheny, individually.

which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below:

1. For actual compensatory and consequential damages according to proof and as provided under the ECOA, which amount is believed to be in excess of $75,000.00 (Seventy-Five Thousand Dollars);

2. For actual, compensatory and/or punitive damages in excess of $75,000.00 on all claims;

3. For punitive damages, according to proof and as provided under the ECOA and New York Law;

4. For injunctive and declaratory relief as provided under the ECOA;

5. For reasonable attorneys' fees as provided under the ECOA and New York Law;

6. For interest as allowed by law;

7. For costs of suit incurred herein;

8. For such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by a jury made up of the maximum number of jurors permitted by law.

Respectfully submitted,

/s/ Jonathan R. Miller, Esq.

24

4 Castle Lane
Hopewell, N.J. 08525
Tel. (609) 955-1226
Email: jmiller@tuanolona.com

*Of Counsel to:*
Tuan Olona LLP
One Rockefeller Plaza, 11th Floor
New York, N.Y. 10020


/s/ Thomas J. Connick, Esq.
 (Ohio Bar No. 0070527)
*Admission Pro Hac Vice Pending*
Connick Law LLC
25550 Chagrin Boulevard, Suite 101
Beachwood, OH 44122
PH: 216-364-0512
FX: 216-609-3446
tconnick@connicklawllc.com

25