**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RIVERSIDE APARTMENTS LIMITED,<br><br>           Plaintiff,<br><br>v.<br><br>HUNT MORTGAGE GROUP, LLC fka Centerline Capital Group, and OWEN BREHENY,<br><br>           Defendants. | Civil Action No. 16-cv-6875-RJS<br><br><br>**PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND**[1] |

### NATURE OF THE ACTION

1.      This action arises under the Equal Credit Opportunity Act, 15 USCA 1691, et seq. and Regulation B, Title 12 Code of Federal Regulations, Part 202 (the "ECOA"). Plaintiff also alleges certain supplemental state law claims.

2.      Defendants violated the ECOA by, among other things, and without limitation:

    a.  Refusing to grant credit substantially in the amount or on substantially the terms outlined in the application for credit and term sheet offered by Defendants;

    b.  Failing to notify Plaintiff, either orally or in writing, of an adverse action on its application for credit, with the reason(s) for the adverse action, within thirty (30) days of obtaining all the information that Defendants required and regularly obtained and considered in evaluating credit applications in the amount and type of credit requested by Plaintiff;

---

[1] Per Leave of Court.

1

c. Failing to notify Plaintiff, either orally or in writing, that its application for credit, i.e. loan, was incomplete within 30 days, in the event Defendants allege that the application was incomplete (which it was not);

d. Unlawfully requesting inappropriate information about a current or former spouse, unrelated to the loan requested;

e. Discriminating against Richard Reinberg, who was 82 years old at the time of the application, based on his age;

f. Failing to provide any specific statement indicating the principal reasons for taking adverse action against Plaintiff, either orally or in writing; and

g. Refusing and/or failing to extend the requested credit even though the financing on the subject property was a non-recourse loan subject to Fannie Mae Multi-Family Small Loan Program Guidelines ("Fannie Mae Loan Program"), which Plaintiff either met or exceeded.

3. Defendants are also liable for fraud/misrepresentation and promissory estoppel under New York State law.

4. Plaintiff has sustained damages in excess of $75,000.

**PARTIES AND ASSOCIATIONS**

5. Plaintiff, Riverside Apartments Limited ("Riverside"), is a limited liability company organized and operating under the laws of the State of Ohio, with its principal place of business located at 3355 Richmond Road, Suite 231-A, Beachwood, Ohio 44122. Riverside owns the Riverside Village Apartments, located at 650 Dixon Boulevard, Cocoa, Florida 32922 ("Riverside Village" or the "Property"), which serves as the subject matter related to Plaintiff's application for credit, i.e. loan.

6. Non-party Richard Reinberg is an individual and principal, i.e. Managing Member, of Riverside. He is a senior citizen, as he is 85 years old (82 at the time of this transaction), and entitled to the protections against discrimination because his age as provided in in the ECOA. Riverside also, as an entity, is protected from said discrimination. Defendants required Mr. Reinberg to apply for credit to secure the subject loan applied for under the Fannie Mae Loan Program.

7. Non-party DevCorp of America, Inc. is a Florida corporation and Member of Riverside.

8. Defendant Hunt Mortgage Group, LLC ("Hunt Mortgage), formerly known as Centerline Capital Group, is, on information and belief, a company formed under the laws of the state of Delaware and doing business in New York, Florida, Ohio, and various other states. Hunt Mortgage maintains its principal place of business at 230 Park Avenue, 19th Floor, New York, New York 10169, and is a wholly owned subsidiary of Hunt Companies, Inc. Hunt Mortgage focuses on financing commercial real estate, and provides non-recourse direct lending and arranges financing for commercial properties nationwide, and as well as serve as a DUS for Fannie Mae and other governmental loan programs.

9. Defendant Owen Breheny is an individual with a principal place of residence, upon information and belief, in New York. At all times herein mentioned, Breheny was a Senior Vice President and Regional Director of Hunt Mortgage and personally participated in the actions and decisions violating Plaintiff's rights, while acting within the course and scope of said agency and/or employment with Hunt Mortgage, and with the full power and authority to act on behalf of and to legally bind Defendant Hunt Mortgage.

**JURISDICTION**

10. This Court has subject matter jurisdiction pursuant to 28 USC 1331 because the action involves a federal question/statute. The Court has supplemental jurisdiction over the state law claims pursuant to 28 USC 1367(a).

11. The Southern District of New York is the proper venue for this action pursuant to 28 USCA 1391(b) in that one or more defendants have a principal place of business and/or reside in this judicial district, and a substantial part of the events and decision-making giving rise to Plaintiff's claims occurred in this district.

**STATEMENT OF FACTS**

12. The property at issue is Riverside Apartments, located at 650 Dixon Boulevard, Cocoa, Florida 32922, a complex of fifty-two rental dwellings, a small multi-family project ("Riverside Village" or the "Property").

13. Riverside Village is owned by Plaintiff Riverside Apartments Limited ("Riverside"). Riverside, at all times relevant herein, is a business that had less than $1,000,000.00 in gross revenues.

14. The ECOA, and all its protections, applies to commercial business applications and property loans.

15. On September 8, 2014 Defendants provided Plaintiff with the summary terms for the requested loan under the Fannie Mae Loan Program.[2] Significantly, the terms being promised were a non-recourse loan. A non-recourse loan is a type of loan that is secured only by collateral, i.e. in this case the property. It does not require any type of personal guarantee, because if default of the loan occurs the issuer of the loan seizes the property and cannot seek out the borrower for liability.

---

[2] Defendants actually presented Plaintiff with several Term Sheets.

4

16. Plaintiff's property self-qualified for the requested credit; but, nonetheless, Defendants treated Plaintiff's Managing Member, Richard Reinberg, as the applicant for credit to secure the subject loan.

17. Defendants requested and ran credit for Richard Reinberg and Ruth Reinberg (spouse), only. They never ran credit on Riverside or DevCorp – the other Member of Riverside.

18. Plaintiff agreed to Defendants' September 8, 2014 Summary of Terms on September 18, 2014.

19. Plaintiff paid the application fee of $8,500.00 on September 22, 2014.

20. On September 26, 2014 Plaintiff provided Defendants with its completed Application Questionnaire, which was filled out, and signed by Plaintiff's principal and Managing Member Richard Reinberg.

21. On or about September 29, 2014, Plaintiff submitted to Defendants all requested documents required under Defendants' "Small Loans Application Checklist."

22. Defendants provided Plaintiff with Defendants' Due Diligence Requirements for the loan, which were effective as of October 21, 2014. These requirements improperly included, in part, the resume and underwriting certificate for Richard Reinberg's spouse, Ruth Reinberg, as well as a contingent liabilities form for Ruth Reinberg. These documents also included substantial and requested financial information on Richard Reinberg – including credit reports. Defendants requested the financial information on Ruth Reinberg, even though Ruth Reinberg had absolutely no relationship to Plaintiff or to Plaintiff's property.

23. As of October 3, 2014, Defendants had all the documents they requested, necessary to evaluate Plaintiff's requested loan, including documents specifically and improperly requested

by Defendants regarding Ruth Reinberg. As of this date, Plaintiff's loan application was complete and in Defendants' possession.

24. On or about October 27, 2014 Plaintiff's agent, Bonnie Reinberg, explicitly informed Defendants that Ruth Reinberg was not a Member of and/or associated with Riverside.

25. Information requested regarding Mr. Reinberg's spouse, Ruth Reinberg, is a violation of the ECOA and does not fall under any of the exclusions set forth in 12 CFR § 1002.5(c).

26. As of no later than October 3, 2014, the subject property self-qualified for the requested loan under the Fannie Mae and HMS requirements and guidelines.

27. Despite refusing to offer Plaintiff the credit requested based upon the agreed-upon loan application, at no time during this process did Defendants issue any document(s) or oral explanations explaining the reasons, specific or otherwise, for their refusal to extend the requested loan and provide Plaintiff with the statutorily required explanation, reasons, etc. for denying and/or refusing to extend said loan.

28. Defendants merely refused to extend the requested credit, i.e. the loan. Defendants refused to extend credit to Plaintiff because, among other things, Defendants believed that Richard Reinberg, Managing Member, was not creditworthy in the context of this loan, due to his advanced age. Further, Defendants' consideration of Mr. Reinberg's age, was not based upon an "empirically derived, demonstrably, and statistically sound, credit system" as required under 12 CFR § 1002.2(p) of Regulation B. And, any "judgmental" evaluation of Mr. Reinberg's credit served no purpose of evaluating other applicant information that has or had a demonstrable relationship to creditworthiness.

6

29. On November 4, 2014 Defendants advised Plaintiff that Defendant was declining to proceed with the loan, without providing any reason or notification regarding any action taken on the applicant's request for credit whatsoever.

30. By declining the application for credit, i.e. not processing the loan – even though Defendants were not formerly declining the loan – Defendants placed Plaintiff and Richard Reinberg in the precarious financial position of having to get refinanced under duress, as the current mortgage on the property was maturing on November 30, 2014. This, among other things, caused Plaintiff to incur substantial additional financial fees, costs, interest, and legal costs, as well as lost business opportunity related to the subject property.

31. In order to obtain financing through another lender, Plaintiff was required to provide appraisals, environmental, and engineering reports, which were in the possession of Defendants, but paid for by Plaintiff in the application fee. Plaintiff repeatedly requested Defendants to turn over documents, which requests were denied, in violation 12 CFR 1002.14(a)(1) and 1002.14(a)(4). Defendants refused to provide the requested documents, unless Plaintiff executed a full and final release of all claims.

32. On November 5, 2014, Plaintiff advised Defendant Breheny that it was imperative that Defendants provide to Plaintiff the appraisal, environmental and engineering reports for the property to provide to the new lender, to secure the necessary financing on the property.

33. Defendant Breheny responded that same day that it was Defendants' policy not to provide to customers, such as Plaintiff, the appraisal, environmental and engineering reports performed on the property, unless customers, such as Plaintiff, signed a release, i.e. declination letter in favor of Defendants that purported to release any and all claims against Defendants.

7

34. On November 25, 2015, Defendant Breheny again advised Plaintiff that Defendants would not provide Plaintiff with the appraisal, environmental and engineering reports prepared for the property, unless Plaintiff agreed to release Defendant by way of signing Defendants' proposed declination letter.

35. Even though more than one year has elapsed since the completion of Plaintiff's application for credit, Defendants still have not processed the application nor have they made Plaintiffs aware, either orally or in writing, of any missing information that Defendants may have required to complete the loan process.

36. Defendants, by and through Owen Breheny, specifically advised Plaintiff that they were declining to process the loan, but failed to give any reasons why the adverse action was taken, per the ECOA requirements, other than to advise that Defendants were concerned with Mr. Reinberg's creditworthiness due to his advanced age.

37. Plaintiff was forced to acquire a new environmental report, engineering report and have the original appraisal re-addressed to a new lender at their own expense to close its loan with a different lender, incurring substantial additional costs and penalties.

### FIRST CLAIM FOR RELIEF
*Failure to Notify of Adverse Credit Decision in Violation of the ECOA, 15 USC 1691(d)(1) and 12 CFR 202.9(a)(i), (ii), (c) and (f)*

38. Plaintiff refers to and incorporates herein all the foregoing allegations.

39. Defendants failed and continue to fail to provide a statement of specific reasons in writing advising why they took an adverse action.

40. Defendants violated the ECOA, 15 USC 1691(d)(1) and 12 CFR 202.9(a)(i) by failing to notify Plaintiff, either orally or in writing, of the adverse action within the 30 days of Defendants' receipt of the completed loan application. Plaintiff's application was completed no later than October 3, 2014. By that time, Defendants had in their possession all information that

8

Defendants regularly obtain and consider in evaluating applications for the amount and type of credit requested. Since the application was completed and in Defendants' possession as of October 3, 2014, Defendants were required to notify Plaintiff of any adverse decision no later than November 2, 2014 – but Defendants failed to do so.

41. As a direct, legal, and proximate result of the failure to provide notice, either orally or in writing, of the adverse decision, Plaintiff suffered damages in that, among other things, it was required to seek and obtain financing from a different lender at increased financing cost, a shorter loan term, late fees, the loss of their deposit, and the incurring of additional expenses for an appraisal, an environmental report, and an engineering report, and additional legal fees, insurance costs, and expenses.

42. Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, insurance, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses. Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

43. Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

**SECOND CLAIM FOR RELIEF**
*Unlawful Requests for Information About Current Spouse in Violation of the ECOA, 12 CFR 202.5(c)*

44. Plaintiffs refer to and incorporate all the foregoing allegations.

45. Richard Reinberg, as the Managing Member, was required to apply for credit in conjunction with the application of requested credit in order to secure the subject loan.

46. Ruth Reinberg, Richard Reinberg's wife, held no role with Plaintiff, nor was affiliated with Plaintiff in any way, other than as the spouse of the Managing Member.

47. In violation of 12 CFR 202.5(c), Defendants requested information on Ruth Reinberg, the spouse of Plaintiff's Managing Member, Richard Reinberg, who Defendant required apply for credit to secure the subject loan.

48. It was brought to Defendants' attention, in writing, that Ruth Reinberg was not a party to the credit application, yet ran her credit anyway. The request for Ruth Reinberg's financial information was unnecessary and legally prohibited.

49. As a direct, legal, and proximate result of Defendants' unlawful inquiries, Plaintiff suffered damages in their attempts to obtain credit, which were unnecessarily delayed.

50. Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses. Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

51. Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

## THIRD CLAIM FOR RELIEF
### *Age Discrimination in Violation of the ECOA, 15 USC 1691(a)(1)*

52.     Plaintiff refers to and incorporates all the foregoing allegations.

53.     Defendants required Richard Reinberg to apply for credit to secure the subject loan.

54.     Defendants never provided any rationale for the necessity of Richard Reinberg's credit application, based upon the terms sheet provided to Plaintiff, which was an application for credit to obtain a non-recourse loan, except by indicating they were concerned that due to Mr. Reinberg's age, he was not creditworthy.

55.     Defendants violated 15 USC 1691(a)(1) in ways including but not limited to:

   h.   Requiring Plaintiff's Managing Member, Richard Reinberg, to apply for credit for a non-recourse loan;

   i.   Discriminating against Plaintiff based on its Managing Member, Richard Reinberg's, age;

   j.   Considering Richard Reinberg's age in determining whether to process Plaintiff's application for credit.

   k.   Declining to extend the loan due to Defendants' stated concern that Mr. Reinberg was not creditworthy due to his advanced age.

56.     These and other actions by Defendants demonstrate a discriminatory motive and animus, and are impermissible under the ECOA.  Moreover, Plaintiffs are informed and believe that Defendants would not have engaged in the same actions with a similarly situated individual younger than Richard Reinberg.  Indeed, Defendants confirmed that but for Mr. Reinberg's age, the requested credit would have been extended. Further, Defendants advised Plaintiff that they would extend the loan, but only if Plaintiff's much younger corporate representative, Bonnie Reinberg, agreed to guarantee the loan.

11

57.     Because of Defendants' violations of the ECOA, Plaintiff is entitled to actual compensatory damages as provided under the ECOA, including and without limitation all costs incurred as a result of seeking and obtaining new financing, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses.  Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

58.     Based on the amount of actual damages, the frequency and persistence of the failure of Defendants to comply with the ECOA, the resources of Defendants, and the intentional misconduct of Defendants, Plaintiff is also entitled to an award of punitive damages up the statutory limits of the ECOA.

## FOURTH CLAIM FOR RELIEF
### *Fraud And Intentional Misrepresentation*

59.     Plaintiff refers to an incorporates all the foregoing allegations.

60.     Defendants made materially false and fraudulent representations to Plaintiff and Plaintiff's representatives, including, and specifically, without limitation, that Plaintiff and Plaintiff's property qualified for credit and non-recourse lending under the Fannie Mae Loan Program; Defendants specifically represented to Plaintiff that they were offering a non-recourse loan, yet Defendant continued to seek credit qualifying information from Plaintiff's Managing Member, Richard Reinberg, and his wife, Ruth Reinberg, and then, ultimately, refused to extend credit to Plaintiff based upon Mr. Reinberg's age, when that was entirely irrelevant to the terms offered to the Plaintiff under the term sheet, and under the Fannie Mae (and Defendants') underwriting guidelines.

61. Defendants made the specific false representation(s):

l. Defendants falsely represented that the loan being offered was non-recourse;

m. Defendants advised Plaintiff that Ruth Reinberg's credit would not be run, but was run anyway, then they falsely claimed they did so in error;

n. Defendants advised Plaintiff that the property qualified under the subject loan program and was set to close prior to November 30, 2014, but Defendant then later declined the loan application on November 4, 2014 without notice or explanation;

62. In making these materially false representations, and upon information and belief, Defendant intended to defraud Plaintiff by, among other things: charging Plaintiff fees and loan costs, while never intending to extend the requested and agreed upon credit, under the guidelines that Plaintiff, in fact, qualified under.

63. Plaintiff and Plaintiff's representatives reasonably relied upon Defendants materially false representations.

64. As a direct and proximate result of Defendant's intentionally and materially false representations, Plaintiff did incur damages in excess of $75,000.00.

65. The elements of intentional misrepresentation and fraud under New York law are exactly the same. See MBF Clearing Corporation v. Shine, 212 AD2d 478, 479, 623 N.Y.S. 2d 204 [1st Dept 1995].

**FIFTH CLAIM FOR RELIEF**
*Promissory Estoppel[3]*

66. Plaintiff refers to and incorporates all the foregoing allegations.

---

[3] This cause of Action is asserted against all Defendants, except Defendant Breheny, individually.

67. Through the loan application and evaluation process, Defendants clearly and unambiguously promised Plaintiff that it qualified for the loan being sought. Specifically, the Defendants promised, among other things, Plaintiff that:

o. The loan would close prior to the current loan maturing on November 30, 2014;

p. Defendant promised to make Plaintiff a loan consistent with the terms set forth in the terms sheet provided Plaintiffs, and they did not.

q. Defendant promised not to run the credit of Ruth Reinberg, but did so anyway;

68. Based upon the aforementioned promises, Plaintiff reasonably and detrimentally relied upon Defendants' promises and ability to both provide the requested the loan, and close the loan in a timely fashion, prior to November 30, 2014 – the date Plaintiff's existing loan was set to expire. For example, Plaintiff's reasonable, foreseeable, and detrimental reliance includes, without limitation:

r. Plaintiff proceeded, based upon Defendant's promises, that the subject loan would close by November 30, 2012, therefore Plaintiff did not pursue any other financing or applications or third party reports, which would have allowed Plaintiff to finance the property prior to maturity at favorable terms and without any penalties and/or increased costs.

69. Plaintiff's reliance upon Defendant's promises was foreseeable, and detrimentally harmed Plaintiff after Defendants failed to complete and close the loan as promised.

70. Defendants' duties and obligations to provide the loan and extend the credit requested, as promised, was and is independent of any duty under any alleged contract, which did not exists between the parties.

71. Defendants failed and/or refused to extend the requested credit, i.e. loan, as promised, despite Plaintiff and the subject property qualifying for same.

72. As a direct and proximate result of Defendants' promissory estoppel Plaintiff is entitled to actual compensatory and consequential damages, including and without limitation all costs incurred because of seeking and obtaining new financing, additional insurance costs, interest charges, and fees, as well as any lost business opportunities, lost profits, and the costs of the new appraisal, environmental report, and engineering report, and legal fees and expenses. Plaintiff is entitled to compensatory damages in an amount which be proved at trial but which is believed to me in excess of Seventy-Five Thousand Dollars ($75,000.00).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as set forth below:

1. For actual compensatory and consequential damages, according to proof and as provided under the ECOA, which amount is believed to be in excess of $75,000.00 (Seventy-Five Thousand Dollars);

2. For actual, compensatory, and/or punitive damages in excess of $75,000.00 on all claims;

3. For punitive damages, according to proof and as provided under the ECOA and New York Law;

4. For injunctive and declaratory relief as provided under the ECOA;

5. For reasonable attorneys' fees as provided under the ECOA and New York Law;

6. For interest as allowed by law;

7. For costs of suit incurred herein;

8. For such other and further relief as this Honorable Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully requests a trial by a jury made up of the maximum number of jurors permitted by law.

Respectfully submitted,

/s/ Thomas J. Connick, Esq.
 (Ohio Bar No. 0070527)
*Admission Pro Hac Vice*
Connick Law LLC
25550 Chagrin Boulevard, Suite 101
Beachwood, OH 44122
PH: 216-364-0512
FX: 216-609-3446
tconnick@connicklawllc.com

Jonathan R. Miller, Esq.
4 Castle Lane
Hopewell, N.J. 08525
Tel. (609) 955-1226
Email: jmiller@tuanolona.com

*Of Counsel to:*
Tuan Olona LLP
One Rockefeller Plaza, 11th Floor
New York, N.Y. 10020

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of January, 2017, the foregoing was filed electronically, and that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Thomas J. Connick
Thomas J. Connick